Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, & Johnson, P.C.
2999 Douglas Blvd., Ste. 111
Roseville, CA 95661
916-290-7778 ph
916-282-0771 fax

Attorney for Plaintiff
Kimberly Clemons

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| Kimberly Clemons<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Experian Information Solutions, Inc.;<br>TransUnion, LLC; VW Credit, Inc.<br><br>　　　　Defendants. | CASE NO. 8:24-cv-00852<br><br>COMPLAINT FOR DAMAGES:<br><br>　1. Violation of Fair Credit Reporting Act; |

COMES NOW Plaintiff Kimberly Clemons (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's account with VW Credit, Inc. (hereinafter "VCI").

1

3. Here, VCI reported inaccurate and misleading account information to Experian and TransUnion, giving the false impression that Plaintiff was not making timely payments on her reaffirmed vehicle loan with VCI.

4. VCI had actual knowledge of Plaintiff's timely payments yet failed to report receipt of those payments to Experian and TransUnion.

5. Instead of accurately reporting the status and history of the account after approval of the reaffirmation agreement, however, VCI continued to report incomplete information regarding Plaintiff's timely payments.

6. Similarly, TransUnion is also allowing Webbank to report inaccurate and incomplete information regarding Plaintiff's account – indicating that the account is past-due and late rather than discharged in bankruptcy.

7. Such reporting continued for months after Plaintiff's dispute.

8. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

9. Plaintiff's credit score has been adversely impacted by the reporting; she has been unable to rebuild her credit score and obtain favorable interest rates as a result of the reporting.

10. Third parties have been exposed to the inaccurate tradelines.

11. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

12. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

13. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681.

14. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

15. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's attempt to improve her FICO Score.

16. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

17. FICO is a leading analytics software company with its principal headquarters located in San Jose California.

18. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

19. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

20. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan.

21. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

22. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900.

23. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

24. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

25. There are 28 FICO Scores that are commonly used by lenders.

26. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

27. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Information Services, LLC, and Transunion, LLC.

28. FICO does not control what information is provided in a consumer's credit report.

29. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

30. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

31. Each of the five factors is weighed differently by FICO.

32. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

33. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments.

34. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

35. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

36. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

37. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.
38. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

### Metro 2

39. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.
40. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format.
41. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt.
42. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.
43. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.
44. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
45. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of

the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

  f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

  g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

46. The CDIA's Metro 2 is accepted by all CRAs.
47. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).
48. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
49. The three main credit bureaus helped draft the CRRG.
50. The CRRG is not readily available to the public.
51. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.
52. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.
53. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.
54. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

//
//

**Plaintiff's Credit Report / Dispute**

55. In November of 2022 Plaintiff ordered credit reports from Experian, Equifax Information Services, and TransUnion LLC to ensure proper reporting by Plaintiff's creditors.

56. Plaintiff noticed a delinquent and or adverse trade line on her November 2022 credit reports where VCI reported Plaintiff's payment history as incomplete.

57. In response, Plaintiff disputed the inaccurate VCI payment history with Experian, Equifax, and TransUnion in May of 2023.

58. Plaintiff also disputed the Webbank account with TransUnion, indicating that the account should be listed as included/discharged in bankruptcy rather than charged off and past-due.

59. In support of her dispute Plaintiff included her payment history to verify to Experian, Equifax, and TransUnion that she was making (and had made) timely payments to VCI.

60. Plaintiff believes that Experian, Equifax, and TransUnion received Plaintiff's May 2023 dispute and forwarded the dispute to VCI.

61. After the statutory timeframe passed, Plaintiff ordered another credit report in June of 2023 to verify that the VCI account was updated to reflect timely payments.

62. However, VCI and Webbank did not perform any updates to the respective tradelines.

**Inaccuracy – VCI**

63. VCI transmitted inaccurate, misleading, and incomplete information to Experian and TransUnion regarding Plaintiff's payment history.

64. Rather than update the payment history, VCI continued to report that Plaintiff's payment history was incomplete – implying that Plaintiff did not make at three payments on the account.

65. Further, VCI reported to TransUnion that as of May 2023, Plaintiff was no longer making payments on the account.
66. VCI continued this inaccurate and incomplete reporting despite continuing to accept Plaintiff's monthly payments and after it became aware of Plaintiff's disputes.
67. VCI's reporting is inaccurate and incomplete because it fails to indicate that Plaintiff maintained timely and current payments on the account and instead makes it appear that Plaintiff has failed to keep the account in good standing.

**Willfulness**

68. VCI had actual knowledge of Plaintiff's timely payments yet failed to update the payment history on the account.
69. Such reporting was not the result of accident but instead a deliberate attempt to undermine Plaintiff's ability to repair her credit.
70. VCI's inaccurate and incomplete reporting is a deliberate attempt to undermine Plaintiff's ability to restore her credit and maintain a high credit score.

**Damages**

71. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.
72. Plaintiff has experienced frustration and anxiety given that Plaintiff maintained timely payments to VCI in an effort to rebuild her credit.
73. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by VCI's reporting as that reporting has been disclosed and disseminated to various third-party lenders.
74. Until VCI's reporting has been properly updated Plaintiff continues to appear a severe credit risk.

75. Plaintiff has only been offered extremely high interest loans and credit cards as a result of the inaccuracies that appear in her credit report.

76. The actions of Experian, TransUnion, and VCI, as alleged herein are acts in violation of the Fair Credit Reporting Act.

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**Experian and TransUnion – Failure to Assure Credit Reporting Accuracy.**

77. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

78. Experian and TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

79. Had Experian and TransUnion maintained reasonable procedures to assure maximum accuracy Experian and TransUnion would never have allowed VCI to report the account as described herein.

80. Similarly, TransUnion would have never allowed Webbank to continue to report Plaintiff's account as past-due and late instead of included/discharged in bankruptcy.

81. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, denial of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

82. Experian and TransUnion allowed the inaccurate information reported by VCI to be transmitted to various third-party lenders, further damaging Plaintiff's credit.

83. The violations described herein by Experian and TransUnion were willful, specifically Experian and TransUnion have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

84. Instead of correcting VCI's inaccurate reporting Experian and TransUnion allowed the inaccurate and misleading information to continue to be reported and disseminated to third parties.

**Willfulness**

85. Consequently, Experian and TransUnion are liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

86. In the alternative Experian and TransUnion were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

87. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against All Defendants)

**VCI – Failure to Reinvestigate.**

88. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

89. 15 U.S.C. §§ 1681s-2(b) and 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

90. Defendant VCI violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.
91. The CRAs provided notice to VCI that Plaintiff was disputing the inaccurate and misleading information, but VCI failed to conduct a reasonable investigation of the information as required by the FCRA.
92. Based on Plaintiff's dispute, VCI should have known that its reporting was incomplete as Plaintiff's dispute letters highlighted the problems with the tradeline.
93. Further, VCI should have known Plaintiff was making timely monthly payments on the account.
94. The most basic investigation would simply involve reading Plaintiff's dispute letters and reviewing Plaintiff's payment history.
95. Plaintiff alleges VCI did not review well established industry standards for credit reporting.
96. If VCI had reviewed such standards, it would have seen its reporting was inaccurate and or incomplete.
97. Had VCI reviewed the dispute and done any type of investigation, it would have known that Plaintiff maintained direct account payments on the loan and was current with the payments.
98. The lack of investigation is unreasonable.
99. Plaintiff further alleges that VCI both have not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian and TransUnion – Failure to Reinvestigate Disputed Information.**

100. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
101. After Plaintiff disputed the account mentioned above, Experian and TransUnion were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 U.S.C. § 1681i-(a)1.
102. Experian and TransUnion failed to conduct a reasonable investigation and failed to correct the misleading and/or inaccurate statements on the account within the statutory time frame or at all.
103. Experian and TransUnion could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly provided information regarding payment of the loan and included verification of the timely payments made.
104. Similarly, Plaintiff explained that the VCI account was timely paid.
105. Plaintiff alleges that Experian and TransUnion both have its own independent duty to conduct a reasonable investigation 15 U.S.C. § 1681i-(a)1.
106. Experian and TransUnion are not passive entities bound to report whatever information a DF provides.
107. Given the aforementioned, Plaintiff allege that Experian and TransUnion can and do suppress inaccurate information from being reported when DFs provide inaccurate information.
108. Experian and TransUnion can and do instruct DFs on how to properly report certain accounts from time to time upon request from the DF.
109. Experian and TransUnion failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.

110. Experian and TransUnion therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

111. Experian and TransUnion intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian and TransUnion's general policy is to simply parrot whatever information a data furnisher sends.

112. Such policies and procedures inherently lead to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants Experian and TransUnion)

**Experian and TransUnion – Failure to Review and Consider All Relevant Information.**

113. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

114. Experian and TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

115. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

116. The violations by Experian and TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

117. In the alternative Experian and TransUnion were negligent, which entitle Plaintiff to recovery under 15 U.S.C. § 1681o.

118. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants Experian and TransUnion)

**Experian and TransUnion, – Failure to Delete Disputed and Inaccurate Information.**

119. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

120. Experian and TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

121. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

122. The violations by Experian and TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

123. In the alternative, Experian and TransUnion were negligent, which entitle Plaintiff to recovery under 15 U.S.C. § 1681o.

124. Plaintiff are entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

*//*

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
2. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
4. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
5. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: April 18, 2024

Gale, Angelo, Johnson, & Patrick, P.C.
*/s/ Joe Angelo*
Joe Angelo
Attorney for Plaintiff